IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| INEATHA SANDERS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 2:23-cv-504-CWB** |
| | ) | |
| MARTIN O'MALLEY, [1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

MEMORANDUM OPINION AND ORDER

I.     **Introduction and Administrative Proceedings**

Ineatha Sanders ("Plaintiff") filed an application for Supplemental Security Income under Title XVI of the Social Security Act on May 26, 2021 and an application for Disability Insurance Benefits under Title II of the Social Security Act on June 8, 2021—alleging disability onset as of May 14, 2021 due to acid reflux, asthma, anemia, diabetes, gout, high blood pressure, high cholesterol, insomnia, and major depression. (Tr. 23, 125-26, 116, 250, 276).[2] Plaintiff's claims were denied at the initial level on November 9, 2021 and again after reconsideration on May 18, 2022. (Tr. 23, 124, 135, 143, 152, 160, 165, 171, 176). Plaintiff then requested *de novo* review by an administrative law judge ("ALJ"). (Tr. 23, 212). The ALJ subsequently heard the case on November 4, 2022 (Tr. 23, 71-94), at which time testimony was given by Plaintiff (Tr. 79-88) and by a vocational expert (Tr. 89-91). The ALJ took the matter under advisement and issued a written decision on February 22, 2023 that found Plaintiff not disabled. (Tr. 23-39).

---

[1]  Martin O'Malley became Commissioner for the Social Security Administration on December 20, 2023 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]  References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since May 14, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: type II diabetes mellitus; hypertension; mild mitral valve regurgitation; obesity; and borderline intellectual functioning. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds, and can only occasionally climb ramps and stairs. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can frequently operate foot controls. The claimant is limited to the simple, routine tasks of unskilled work and can perform the simple work decisions related to that work. The claimant can maintain attention and concentration for the normal two-hour periods between breaks.

6. The claimant is capable of performing past relevant work as a Cashier (DOT # 211.462-010; light; SVP 2; unskilled). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 14, 2021, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 25-26, 28, 31, 38, 39).  On July 19, 2023, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 6-11), thereby rendering the ALJ's decision the final decision of the Commissioner.  *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to remand the case for a new hearing and further consideration.  (Doc. 12 at pp. 8, 12).  As contemplated by

28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full civil jurisdiction by a United States Magistrate Judge (Docs. 18, 19), and the court finds that the case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) in that the court construes Plaintiff's supporting brief (Doc. 12) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 16) as a competing motion for summary judgment.  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a different result.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the

court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[4] Although *McDaniel* is a Supplemental Security Income case, the same sequence applies to claims for Disability Insurance Benefits. Cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform.  *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform.  *Id*. at 1239.  To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

## III.   Issues on Appeal

Plaintiff raises two issues on appeal: (1) whether the ALJ properly evaluated the prior administrative medical findings of the state agency psychological consultants by failing to include

_____

(5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

into Plaintiff's RFC the limitation of "short, simple instructions"; and (2) whether the ALJ erred at step four of the sequential evaluation process by failing to resolve an apparent conflict between the VE's testimony and the information in the dictionary of Occupational Titles ("DOT").

## IV.    Discussion

### A.    Prior Administrative Medical Findings

Plaintiff contends that the ALJ failed to properly evaluate the prior administrative medical findings of the State agency psychological consultants, Linda Duke, Ph.D. and Yamir Laboy, Psy.D, whose opinions the ALJ found "mostly persuasive."  (Doc. 12 at pp. 2, 4 n.8).  Plaintiff argues that the ALJ's mental RFC finding was erroneous because it failed to include in Plaintiff's RFC assessment the psychological consultants' limitation of "short, simple instructions" and that the ALJ failed to give any explanation for omitting such limitation from the RFC assessment. (*Id*. at pp. 2, 6).

Because Plaintiff's claims were filed on May 26, 2021 and June 8, 2021 (Tr. 23), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The revised regulations no longer use the phrase "treating source" but instead use "your medical source(s)."  *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309 at *5 (N.D. Ala. July 22, 2021).  For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022).  "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator

must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(b)).  Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources."  *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618 at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c).  "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency."  20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3.  Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors."  *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296 at *4 (M.D. Fla. Apr. 14, 2022); *Nix*, 2021 WL 3089309 at *6 ("The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.") (citing 20 C.F.R. § 404.1520c(a)-(c)); *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) ("[The agency] will articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record.").  "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with

other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156 at \*8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050 at \*3 (M.D. Ala. June 23, 2022).  Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at \*4 (citation omitted); *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. §§ 404.1520c(d), 416.920c(d).  Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ... Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review."  *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218 at \*9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. §§ 404.1545(a), 416.945(a) ("Your residual functional capacity is the most you can still do despite your limitations.").  "[T]he  task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor."  *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion.  The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036 at

*8  (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646 at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted).   "It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted).  Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed.  *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).  Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532 at *4 (S.D. Ala. Mar. 9, 2022).

As to Plaintiff's mental limitations, the ALJ included in the RFC that Plaintiff "is limited to the simple, routine tasks of unskilled work and can perform the simple work decisions related to that work" and that Plaintiff "can maintain attention and concentration for the normal two-hour periods between breaks." (Tr. 31). Plaintiff argues that the RFC determination did not account for Dr. Duke's and Dr. Laboy's opinions that she had moderate limitations in her ability to "understand, remember, or apply information." (Doc. 12 at pp. 2-4) (citing Tr. 119, 122, 130, 133). Plaintiff further argues that without giving any explanation for the omission, the ALJ, who found Dr. Duke's and Dr. Laboy's opinions "persuasive," failed to include Dr. Duke's and Dr. Laboy's opinions limiting Plaintiff to carrying out "short and simple instructions" and instead erroneously translated the limitation to "simple, routine tasks of unskilled work" and "simple work decisions related to that work." (*Id*. at pp. 4-5) (citing Tr. 31, 122, 142). Plaintiff contends that the ALJ's error was not harmless because a limitation to "short and simple instructions" was outcome-determinative and created an apparent conflict with the VE's testimony. (*Id*. at p. 6).

When a claimant has presented a colorable claim of mental impairments, the ALJ is required to complete a Psychiatric Review Technique Form ("PRT") to evaluate the severity of the mental impairments. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); 20 C.F.R. §§ 404.1520a, 416.920a. Applying the PRT, the ALJ must rate how a claimant's mental impairments impact four broad functional areas known as the "paragraph B criteria": "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324 (11th Cir. 2021). In rating the degree of limitation in each of those areas, the ALJ utilizes the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). "The ALJ must incorporate these results into the

findings and conclusions." *Burns v. Comm'r, Soc. Sec. Admin.*, No. 22-11181, 2023 WL 5607883 at *2 (11th Cir. Aug. 30, 2023); *Enriquez v. O'Malley*, No. 8:23-CV-0374, 2024 WL 533150 at *3 (M.D. Fla. Jan. 24, 2024), *report and recommendation adopted*, No. 8:23-CV-374, 2024 WL 519764 (M.D. Fla. Feb. 9, 2024) ("[T]he ALJ incorporates the results of the PRT into the findings at steps four and five of the sequential evaluation process."); 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).  "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of mental impairment(s)" and "must include a specific finding as to the degree of limitation in each of the functional areas described [above]."  20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

"To find the presence of a listing-level mental impairment, the ALJ must find that a claimant has an 'extreme' limitation in one of the four functional areas or a 'marked' limitation in two." *Buckwalter*, 5 F.4th at 1325; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).  A "mild" limitation indicates that a claimant's functioning is "slightly limited," whereas a "moderate limitation indicates that a claimant's functioning is "fair."  *Id*.; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(b), (c).  The ALJ considers all of the relevant medical and non-medical evidence in evaluating a claimant's mental disorder, including information about the claimant's daily activities at home and in the community.  *Id*.; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(3)(a)-(b).  "The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four."  *Id*.  "The ALJ is required to incorporate the results of the special technique into her findings and conclusions," but the technique "is separate from the ALJ's evaluation of the claimant's RFC assessment, the latter of which is an assessment of the claimant's ability to do work despite his

impairments.  The mental RFC assessment is a more detailed assessment of the claimant's functionality."  *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (internal citations omitted).  "And at step five in the sequential analysis, an ALJ must account—explicitly or implicitly—for any moderate limitations in one or more of these domains when soliciting opinion testimony from a vocational expert, or the ALJ must indicate in the decision that the evidence otherwise supports the RFC that underlies the expert's opinions."  *Gibson v. Comm'r of Soc. Sec.,* No. 2:23-CV-154, 2024 WL 1231313 at *7 (M.D. Fla. Mar. 22, 2024) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011)); *Buckwalter*, 5 F.4th at 1325 ("[T]hough the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's moderate limitation in the area of concentration, persistence, or pace in a hypothetical posed to the VE.").

Drs. Duke and Laboy, in considering the "paragraph B" criteria pursuant to the PRT, found that Plaintiff had moderate limitations in the areas of understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself, and "mild" limitation in interacting with others.  (Tr. 118-19, 130, 138, 146).  The ALJ, however, rated Plaintiff as having "moderate" limitation only in understanding, remembering, or applying information, "mild" limitations in the areas of interacting with others and concentrating, persisting, or maintaining pace, and "no" limitation in adapting or managing oneself.  (Tr. 30-31).

In finding mild limitation in interacting with others, the ALJ explained that Plaintiff lived with her family, engaged in video chats with others, and reported that she was capable of going in public for activities like shopping in stores.  (Tr. 30, 339, 346-47).  The ALJ noted that Plaintiff reported that she did not have problems getting along with family, friends, or neighbors and that she had never been fired or laid off from a job because of problems getting along with other people.

(Tr. 30, 347-48).  The ALJ further considered treatment records that described Plaintiff as calm, pleasant, and cooperative and indicated that she was appropriately interactive.  (Tr. 30).  Moreover, the ALJ noted that none of Plaintiff's treatment providers documented any significantly aggressive or abnormal behavior.  (Tr. 30).

With regard to finding mild limitation in concentrating, persisting, or maintaining pace, the ALJ noted that Plaintiff reported having the ability to perform significant, multi-step activities of daily living, such as obtaining a driver's license, shopping in stores for necessary items, and caring for her personal needs, and that treatment records showed intact concentration and attention. (Tr. 30-31, 344, 346, 973, 975).  The ALJ also noted that none of Plaintiff's treatment providers documented any significant problems with her focus during her treatment appointments.

As for finding no limitation in adapting or managing oneself, the ALJ noted that Plaintiff reported that she could care for her personal needs, she did not need any special reminders to care for her personal needs or grooming, and that she did not need help or reminders to remember to take her medications.  (Tr. 31, 344-45).  The ALJ further noted that Plaintiff was routinely described as properly alert and oriented in the treatment records, that her insight and judgment was routinely described as "intact" or "good," and that she had intact impulse control.  (Tr. 31).  The ALJ additionally explained as follows:

> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.
> ...
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 31).  *See* 20 C.F.R. §§ 404.1520a(a)(4), 404.1520a(b)-(d); 416.920(a)(4), 416.920a(b)-(d).[5]

In assessing Plaintiff's mental RFC, Dr. Duke and Dr. Laboy both opined that Plaintiff was "moderately limited in the ability to understand and remember detailed instructions" and that she had "the ability to understand, remember, and carry out many short and simple instructions." (Tr. 122, 133).  Dr. Duke and Dr. Laboy also both opined that Plaintiff was "moderately limited in the ability to carry out detailed instructions," that she was "moderately limited in the ability to maintain concentration for extended periods," that she could "attend and concentrate for two-hour periods," and that "[c]hanges in the work routine should be gradually introduced."  (Tr. 123, 134, 141-42).

The ALJ found Dr. Duke's and Dr. Laboy's opinions "mostly persuasive":

> The undersigned finds this opinion to be mostly persuasive. However, the state agency did not consider the claimant's previous diagnosis of borderline intellectual functioning, which was documented in a prior unfavorable decision by an Administrative Law Judge before the alleged onset date.  (Exhibit D1A).  Instead, the state agency found depression and anxiety severe, which is not supported by the current records documenting significant improvement in the claimant's mental health symptomology and no notation of anxiety in mental health records during the relevant period.  (Exhibit D8F).  Based on this updated evidence, the undersigned finds depression and anxiety to no longer be severe impairments. Furthermore, this improvement and the many normal findings on the claimant's mental status examinations is more consistent with finding a moderate limitation in understanding, remembering, and applying information, with mild limitations in interacting with others and concentrating, persisting, and maintaining pace.  There is no support for any limitation in the claimant's ability to adapt and manage herself, as she can care for her personal needs (Exhibit D5E) and routinely has good insight and judgment upon examination.  (Exhibit D8F; D10F).  This lack of limitation in adapting and managing herself is not consistent with the state agency's determination that the claimant would require changes in a work setting to be gradually introduced.  Nevertheless, the state agency's determination that the claimant can understand, remember, and carry out many short and simple instructions, and can attend and concentrate for two-hour periods is consistent with the normal mental status examinations throughout the relevant period (Exhibit D8F; D10F) and the claimant's significant activities of daily living. (Hearing Testimony;

---

[5] Plaintiff does not challenge the ALJ's PRT analysis.

Exhibit D5E).   Therefore, the undersigned finds this opinion to be mostly persuasive.

(Tr. 37-38).   In assessing the mental treatment records, the ALJ noted the following:

> The claimant has also sought mental health treatment during the relevant period, and has been diagnosed with borderline intellectual functioning.   The claimant presented to Southeast Health Psychiatry Clinic in January 2022 to follow up for major depressive disorder.   However, this condition was described as controlled with medications, and the claimant denied depression, suicidal or homicidal ideations, or psychotic symptoms at that time.   In fact, she was described as functioning relatively well in her personal life.   During the objective examination, the claimant was calm, pleasant, and cooperative.   Her mood was "fine" and her affect was mood congruent, full range, and appropriate.   The claimant's thought content was logical.   She was properly alert and oriented, and had intact memory, concentration, and attention.   Her insight, judgment, and impulse control were described as intact.   She was diagnosed with major depressive disorder in remission, and no mention was made of any significant deficits in her intellectual functioning.   Similar findings were noted during a follow up appointment in June 2022. (Exhibit D8F). Other treatment records note normal mental status examination findings as well.   (Exhibit D3F; D10F; D12F).   The claimant also reports the ability to perform significant, multi-step activities of daily living. She has a driver's license, cares for her personal needs, shops in stores for necessary items, and spends time with others.   (Hearing Testimony; Exhibit B5E).   The evidence outlined above supports the determination that the claimant could perform the simple, routine tasks of unskilled work, and could perform the simple work decisions related to that work.   Furthermore, the claimant is able to maintain attention and concentration for the two-hour periods between breaks.

(Tr. 36-37).   And in conclusion, the ALJ stated the following:

> While the claimant has been diagnosed with borderline intellectual functioning, any other mental health symptomology has been well-controlled during the relevant period, and the claimant's mental status examinations are routinely normal. Therefore, the record supports the determination that the claimant can perform the simple, routine tasks of unskilled work, and can perform the simple work decisions related to that work.   Furthermore, the clamant is able to maintain attention and concentration for the normal two-hour periods between breaks.

(Tr. 38).

Plaintiff argues that because the ALJ rated her as having "moderate" limitation in understanding, remembering, or applying information at step three (Tr. 30), the ALJ therefore must have "found that Plaintiff has moderate limitations in her ability to even follow one- or two-step

15

oral instructions to carry out a task" as described in 20 C.F.R. § Pt. 404, Subpt. P, App.1 § 12.00E.1, where the "paragraph B" criterion of understanding, remembering, or applying information is discussed in the Listing of Mental Disorders.  (Doc. 12 at p. 3).  The Commissioner contends that "[n]othing in the regulations states that a rating of 'moderate' limitation in any of the four broad areas of functioning means that the claimant has work-related limitations based on the examples provided for each area in the Listing of Impairments."  (Doc. 16 at p. 6).  The court agrees with the Commissioner.

As discussed in 12.00E.1 regarding the first "paragraph B" criterion, "Understand, remember or apply information":

> This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. <u>Examples include</u>: Understanding and learning terms, instructions, procedures; <u>following one- or two-step oral instructions</u> to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. <u>These examples illustrate</u> the nature of this area of mental functioning. <u>We do not require documentation of all of the examples</u>.

20 C.F.R. § Pt. 404, Subpt. P, App.1 § 12.00E.1 (emphasis added).  The ability to carry out one- or two-step oral instructions is merely included as one of the examples in the broad, general "paragraph B" category of understanding, remembering, or applying information.  There is nothing to suggest that someone who is moderately limited in understanding, remembering, or applying information is necessarily limited in <u>all</u> of the examples listed in the description of this broad functional area.  *See Smith v. Comm'r, SSA*, No. 4:18-CV-274, 2019 WL 4564832 at *2 (E.D. Tex. Sept. 20, 2019) ("Nothing in the regulations indicate that the finding of a moderate limitation in one of the broad, general categories necessarily means that the claimant is moderately limited as to all abilities for that category.").  Nor does Plaintiff cite to any regulations or case law that would

support her argument regarding her reading of 12.00E.1.  Moreover, when assessing Plaintiff's RFC, Dr. Duke and Dr. Laboy specifically limited Plaintiff to only "short, simple instructions"— not to an express limitation of "following one- or two-step oral instructions to carry out a task." Thus, Plaintiff's citation to cases dealing with limiting a plaintiff to 1-2-step instructions are irrelevant.  *McGriff v. Colvin*, No. 3:16-CV-911, 2017 WL 3142336 at *3 (D. Conn. July 25, 2017) ("[T]here is a significant and now well-acknowledged difference between an RFC limitation to 'one-to-two-step tasks' and an RFC limitation to 'short, simple instructions.'"); *Barnes v. Colvin*, No. 6:14-CV-01906, 2015 WL 8160669 at *4-5 (D. Or. Dec. 7, 2015); *Ealy v. Kijakazi*, No. 1:20-CV-00025, 2021 WL 4443702 at *11 (M.D. Ala. Sept. 28, 2021) (distinguishing that State agency psychological consultant limited plaintiff to short and simple instructions and did not specifically limit Plaintiff to "simple one- or two-step instructions").

Plaintiff further argues that, despite finding Dr. Duke's and Dr. Laboy's opinions persuasive and consistent with the evidence of record, the ALJ failed without any explanation to include in the RFC the limitation to carrying out "short and simple instructions" and instead erroneously translated the limitation in the RFC to "simple, routine tasks of unskilled work" and "simple work decision related to that work."  (Doc. 12 at pp. 4-5).  Plaintiff maintains that had the ALJ properly included Drs. Duke and Laboy's limitation to "short and simple instructions" into the RFC and asked the VE to identify jobs that required the ability to understand and remember "short and simple" instructions, then none of the jobs identified by the VE would have qualified because they required a conflicting reasoning level of 2 or 3 per the DOT.  (*Id*. at pp. 7-8).

As stated above, the ALJ—not a doctor—has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945.  Accordingly, an ALJ "is not required to base[] [the] RFC on a doctor's opinion."  *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190 at *6

(N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014));

*Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775 at *2 (M.D. Ala. Oct. 19, 2022)

("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any

particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'")

(citation and internal quotation marks omitted).   While state agency medical or psychological

consultants are considered experts in Social Security disability evaluation, "[a]dministrative law

judges are not required to adopt any prior administrative findings, but they must consider this

evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate."   20 C.F.R. §

404.1513a(b)(1); 20 C.F.R. 416.913a(b)(1).   The regulations provide that the Commissioner "will

not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from [the claimant's own]

medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).   "Thus, an ALJ need not adopt every

part of an opinion that the ALJ finds persuasive."  *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-

CV-1076, 2021 WL 2417084 at *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775 at *3

("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than

a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions,

and some slight deviation may be appropriate."); *see also Szoke v. Kijakazi*, No. 8:21-CV-502,

2022 WL 17249443 at *9 n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases).   Nor is an ALJ

"compelled to 'specifically refer to every piece of evidence in his decision.'"  *Id*. at *9 (citation

omitted).

Although the ALJ found the State agency psychological consultants' opinions to be

"mostly" persuasive, the ALJ was under no obligation to adopt every part of the opinions.  "The

regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise

find persuasive." *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404 at *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800 at *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the RFC rests with the ALJ."); *Tolbert*, 2022 WL 4591646 at *2 ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, No. CV 321-066, 2022 WL 4000719 at *5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*, No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050 at *3.

In fashioning the RFC, the ALJ limited Plaintiff to "the simple, routine tasks of unskilled work" and to "perform[ing] the simple work decisions related to that work" and to "maintain[ing] attention and concentration for the normal two-hour periods between breaks." (Tr. 31). Per the ALJ's statement, the RFC "reflect[ed] the degree of limitation the [ALJ] ... found in the 'paragraph B' mental functional analysis." (Tr. 31). But according to Plaintiff, the non-exertional limitations did not account for Dr. Duke and Dr. Laboy's shared opinion of limiting her to carrying out "short and simple instructions." Nonetheless, the RFC did implicitly include the limitations, "short and simple instructions."

As an initial matter, the moderate limitations as to the category of understanding, remembering, or applying information were reflected in the RFC by the ALJ's limiting Plaintiff to

"simple, routine tasks." *See Enriquez*, 2024 WL 533150, at *5 ("Regarding moderate limitations in the category of understanding, remembering, and applying information, ... courts generally hold that a limitation in the RFC to simple or routine tasks is sufficient."); *accord Shaffron v. Comm'r of Soc. Sec.*, No. 8:20-CV-2930, 2022 WL 4229339 at *6 (M.D. Fla. July 19, 2022), *report and recommendation adopted*, No. 8:20-CV-2930, 2022 WL 3355094 (M.D. Fla. Aug. 15, 2022); *William S. V. v. Kijakazi*, No. 19-cv-0498, 2021 WL 3722331 at *4 (N.D. Okla. Aug. 23, 2021) (RFC limiting plaintiff to simple, repetitive tasks adequately accounts for moderate limitation in the area of understanding, remembering, and applying information.); *Karlin v. Saul*, No. 20-3113, 2021 WL 2036649 at *4 (E.D. Pa. May 21, 2021) (ALJ adequately explained how moderate limitation in area of understanding, remembering, or applying information was incorporated into RFC where ALJ stated that she accounted for it by limiting claimant to unskilled work and occasional interaction with the public).

Moreover, limiting Plaintiff to unskilled work accounted for Dr. Duke and Dr. Laboy's opinion that Plaintiff could carry out short and simple instructions. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968. "By definition, unskilled jobs require no more than simple tasks." *James C.*, 2018 WL 6137611 at *5; *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 878 (11th Cir. 2006) ("[A] limitation to simple tasks is already contained within the unskilled limitation."). Unskilled work generally requires the following: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work--i.e., simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes in a routine work setting." SSR 96-9p, 1996 WL 374185 at *9 (S.S.A. July 2, 1996); *see also* SSR 85-15,

1985 WL 56857 at *4 (S.S.A. 1985) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."); *see also Washington v. Berryhill*, 2018 WL 3078763 at *7 (S.D. Ala. June 20, 2018) (finding that the Social Security Regulations "read together, establish that unskilled work requires the ability to understand, carry out, and remember simple instructions and duties ...") (citing *Anderson v. Astrue*, No. 2:11-00046, 2011 WL 3843683 at *3 (S.D. Ala. Aug. 30, 2011)); *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210-11 (3d Cir. 2019) ("A limitation to 'simple tasks' is fundamentally the same as one 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'") (collecting cases). "Using the skill level definitions in 20 CFR 404.1568 and 416.968 unskilled work corresponds to a[] [specific vocational preparation] SVP of 1-2." SSR 00-4P, 2000 WL 1898704 at *3 (S.S.A. Dec. 4, 2000). "'Thus, [an] ALJ's reference to unskilled work may be considered as incorporating [a] plaintiff's abilities to understand, carry out, and remember short and simple instructions on a sustained basis.'" *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050 at *3 (M.D. Ala. June 23, 2022) (quoting *Ealy*, 2021 WL 4443702 at *10 (quoting *Shawbaker v. Colvin*, 189 F. Supp. 3d 1168, 1174 (D. Kan. 2016))).

Therefore, by limiting Plaintiff to "simple, routine tasks of unskilled work," the ALJ implicitly incorporated Dr. Duke and Dr. Laboy's opinion limiting Plaintiff to carrying out "short and simple instructions." *See Williamson*, 2022 WL 2257050 at *3-4 (where State agency psychological consultant opined that plaintiff "could understand, remember, and carry out very short and simple instructions, whereas detailed and complex instructions should be limited," the court found that the ALJ's limitation that plaintiff could perform "the simple routine tasks of

unskilled work involving simple work decisions with few changes" was substantially the same as the limitation imposed by State agency psychological consultant). Although the ALJ was not required to adopt Dr. Duke and Dr. Laboy's specific limitation, the ALJ implicitly did so. The ALJ did not fail to include into Plaintiff's RFC the limitation of "short, simple instructions" as Plaintiff asserts, and no conflict exists between the RFC and the opinion of Dr. Duke and Dr. Laboy. Given that Plaintiff's RFC included all of the limitations supported by the evidence, the hypothetical question posed to the VE, which included all of the limitations listed in the RFC (Tr. 89-90), was proper. *Bouie v. Astrue*, 226 F. App'x 892, 895 (11th Cir. 2007) ("Because the ALJ posed hypotheticals consistent with the RFC, which was supported by substantial evidence, the ALJ did not err in posing the hypotheticals.").

### B.     Past Relevant Work

Plaintiff argues that the ALJ, who limited her to simple, routine tasks, erred at step four of the sequential evaluation by failing to resolve the apparent conflict between the VE's testimony that she could perform her past relevant work of cashier and the DOT—as the DOT provided that the occupation of cashier had a reasoning level of three, which according to Plaintiff would conflict with the RFC's limitation to "simple, routine tasks." (Doc. 12 at pp. 8, 10). The Commissioner contends that any possible conflict between the VE's testimony and the DOT is irrelevant because Plaintiff failed to show or even argue that she could not perform her job as a cashier as she actually performed it, *i.e.*, the DOT relates only to how work is generally performed in the national economy. (Doc. 16 at p. 10). The Commissioner asserts that Plaintiff therefore has forfeited or abandoned any argument that she could not perform her job as a cashier as she actually performed the job. (*Id*. at pp. 10-11). The court agrees with the Commissioner.

At step four of the sequential evaluation process, the ALJ will consider a claimant's RFC and the claimant's past relevant work to determine whether the claimant "can still engage in the kind of gainful employment that [the claimant] has undertaken in the past." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); 20 C.F.R. § 404.1520(a)(4)(iv). "At step four, the claimant carries a heavy burden of showing that his impairment prevents him from performing his past relevant work." *Id*. "The claimant bears the burden of showing that he cannot perform his past work as he actually performed it and as it is generally performed in the national economy." *Simpson v. Com'r of Soc. Sec.*, 423 F. App'x 882, 884 (11th Cir. 2011) (citing SSR 82-61, 1982 WL 31387 at *1-2 (S.S.A. Jan. 1, 1982) and *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986)). Stated differently, "[i]f the ALJ finds that the claimant cannot perform the functional demands and duties of her past job as she actually performed it, he will consider whether the claimant can perform the functional demands and duties of the occupation as generally required by employers throughout the national economy." *Scharber v. Comm'r of Soc. Sec.*, 411 F. App'x 281, 282 (11th Cir. 2011); *see also Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) ("[I]t is the claimant's burden to demonstrate not only that she can no longer perform her past relevant work as she actually performed it, but also that she can no longer perform this work as it is performed in the general economy."); *Cantu v. Comm'r of Soc. Sec.*, No. 2:19-CV-832, 2021 WL 960686 at *4 (M.D. Fla. Mar. 15, 2021).

In considering whether a claimant can return to past relevant work, "[t]he ALJ must take all the duties of a claimant's past work into consideration and evaluate whether the claimant can still perform them in spite of the severe impairment or combination of impairments." *McCormick v. Soc. Sec. Admin., Com'r*, 619 F. App'x 855, 858 (11th Cir. 2015); *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). In support of a claim, "[t]he claimant is the primary

source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386 at *3 (S.S.A. Jan. 1, 1982); *Cantu*, 2021 WL 960686 at *4.  "The ALJ may rely on information contained in the Dictionary of Occupational Titles (DOT) to determine whether a claimant can perform his past relevant work." *Rivera-Cruzada v. Comm'r of Soc. Sec.*, 741 F. App'x 737, 739 (11th Cir. 2018).  As Social Security Ruling 00-4p explains, the SSA "rel[ies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.  [The SSA] use[s] these publications at steps 4 and 5 of the sequential evaluation process." SSR 00-4P, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000).  "Similarly, [20 C.F.R. § 404.1566(d)] explicitly names the DOT as one of the main sources of jobs data the SSA relies on, and provides that ALJs 'will take administrative notice of reliable job information available' in the DOT." *Washington*, 906 F.3d at 1364-65 (citations omitted).

"The ALJ may also rely on the testimony of a VE, 'an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.'" *Rivera-Cruzada*, 741 F. App'x at 739 (citation omitted); SSR 00-4P, 2000 WL 1898704 at *2; 20 C.F.R. § 404.1560(b)(2) ("We will ask you for information about work you have done in the past.  We may also ask other people who know about your work. ... We may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.").  However, "[g]enerally, vocational expert testimony is not necessary to determine whether a claimant can perform his past relevant work." *Hernandez v. Comm'r of Soc. Sec.*,

433 F. App'x 821, 823 (11th Cir. 2011) (citing *Lucas*, 918 F.2d at 1573 n.2); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 918 (11th Cir. 2019) ("The testimony of a vocational expert is only required to determine whether the claimant's RFC permits her to do other work after she has met her initial burden of showing that she cannot do past work.")).

Here, the ALJ found that Plaintiff was capable of performing past relevant work as a cashier and that such work did not require the performance of work-related activities precluded by her RFC:

> The claimant reported that she worked as a resort worker at a cash register at the state park from April 1992 through December 2015. (Exhibit D4E; D11E). This unskilled work was performed well in excess of the time required to learn this unskilled work. (Hearing Testimony; Exhibit D9D; D10D; D12D; D13D; D14D; D15D; D4E; D11E). ...
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. At the hearing before the undersigned, the undersigned heard testimony from a vocational expert, using a hypothetical, which included the limitations outlined in Finding 5, above. The vocational expert testified that the foregoing limitations do not preclude such a hypothetical individual from performing the claimant's past relevant work. (Hearing Testimony). The undersigned has carefully considered the vocational expert's testimony, and accepts it in accordance with the requirements of Social Security Ruling 00-4p.[6]

(Tr. 38-39).

At the hearing, the ALJ and VE had the following colloquy:

---

[6] The Eleventh Circuit has explained:

> SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT. Rather, as we see it, the ALJ has an affirmative obligation to identify any "apparent" conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence.

*Washington*, 906 F.3d at 1362.

ALJ:  Then I will expect that your testimony you give today will be based on your knowledge, your education, training and experience, and will be consistent with the DOT unless you tell me otherwise.

VE:  Yes, your Honor.

ALJ:  Do you have enough information to classify her work as a cashier at the golf course?
. . .
VE:  Yes.  So, work as a cashier, that DOT code is 211.462-010, the DOT and the claimant both described it as light, with an SVP of 2, making it unskilled work.

ALJ:  Okay. I'd like you to assume an individual is the same age, same education and same past work experience as the claimant, who is limited to the light exertional level, she can do no climbing, no ladders, ropes or scaffolding, but can occasionally climb ramps or stairs, she can occasionally stoop, kneel, crouch or crawl, she can frequently operate foot controls, she would be limited to the simple, routine tasks of unskilled work, she would be able to perform the simple work decisions usually related to that work, and she would be able to maintain concentration, attention to [sic] concentration for the normal two-hour periods between breaks.  Now, with those limitations, would the individual be able to perform her past work [as a cashier at DOT 211.462-010]?

VE:  Yes, your Honor, both as described by the DOT and as you described it.

(Tr. 89-90).

The record reflects that there was sufficient information about the demands of Plaintiff's past work.  The ALJ considered Plaintiff's work history report, which was in the record at the time of the hearing, Plaintiff's testimony as to her past work, and the VE's assessment of Plaintiff's past work.  (Tr. 38-39, 76, 79-80, 89-91, 327, 332, 372).  The evidence shows that Plaintiff's past relevant work as actually performed was not precluded by her RFC.  Plaintiff did not object to or question the VE's finding that she could perform her past relevant work as a cashier.  The ALJ thus properly relied on the VE's testimony regarding the physical and mental demands of Plaintiff's past work.  *Simpson*, 423 F. App'x at 884 ("The ALJ may rely on a VE's testimony regarding the physical and mental demands of the claimant's past work."); SSR 82-61, 1982 WL 31387 at *2 ("[W]here the evidence shows that a claimant retains the RFC to perform

the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'" ); *Savor v. Shalala*, 868 F. Supp. 1363, 1365 (M.D. Fla. 1994) ("[I]t is clear that the ALJ did determine the physical demands of the Plaintiff's past work and her ability to perform that work in light of her impairment.   The ALJ accomplished this by eliciting the opinion of a vocational expert.   The vocational expert opined that, given the limitations the ALJ determined the Plaintiff had, the Plaintiff could perform one of two previous occupations."); *Rivera v. Colvin*, No. 1:15-cv-146, 2016 WL 4424973 at *6 (N.D. Fla. Mar. 3, 2016), *adopted* at 2016 WL 4414792 (Aug. 18, 2016) (claimant failed to meet her burden at step four where claimant offered no evidence to rebut the ALJ's determination and where claimant's counsel had opportunity to question both claimant and VE at hearing regarding claimant's past relevant work).

Even if a conflict did exist and Plaintiff could not perform her past relevant work as generally performed in the national economy, Plaintiff failed to show that she could not perform her past relevant work as a cashier as she <u>actually</u> performed the job.   Plaintiff had the burden to demonstrate that she could no longer perform her past relevant work as she actually performed it. *Waldrop*, 379 F. App'x at 953.   The VE's testimony reveals that Plaintiff was capable of performing her cashier job as <u>actually performed</u> (Tr. 38-39, 89-90), and Plaintiff has not shown the relevance of the cashier's DOT code that described how the work is <u>generally performed</u>. *See* SSR 00-4P, 2000 WL 1898704 at *3 ("The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.").   Nor has Plaintiff asserted that the ALJ erred in finding that she could perform past work as she actually performed it.   Plaintiff's argument therefore fails. *See Hernandez v. Astrue*, 277 F. App'x 617, 625 (7th Cir. 2008) ("When a VE testifies that a claimant can still

perform her past work as it was actually performed, the DOT becomes irrelevant."); *Dukes v. Saul*, No. 8:18-cv-2553, 2020 WL 755393 at *4 (M.D. Fla. Feb. 14, 2020) (determining that the ALJ had no duty to resolve at step four a conflict between the DOT and the VE's testimony because the VE testified that the claimant could perform her PRW as actually performed) (citing *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) ("Whereas the Dictionary describes jobs as they are generally performed, an expert is often called upon to explain the requirements of particular jobs, and as such, his deviations from the Dictionary in such testimony do not actually 'conflict' with the Dictionary.")); *Bratcher v. Kijakazi*, No. 4:22-CV-206, 2023 WL 319818 at *4-5 (N.D. Fla. Jan. 3, 2023), *report and recommendation adopted*, No. 4:22CV206, 2023 WL 318461 (N.D. Fla. Jan. 19, 2023).[7]

## V. Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

---

[7] Plaintiff cites a litany of cases in support of her argument that the ALJ erred by failing to resolve the alleged apparent conflict between the VE's testimony and the DOT. However, those cases are inapposite as none pertains to a situation where, like here, the ALJ found that the plaintiff could perform past relevant work as actually performed. Instead, the cases cited by Plaintiff all involve situations where the ALJ found that the plaintiff was unable to perform his or her past relevant work and the government was required to meets its burden at step five by showing there were other jobs in the national economy that the plaintiff could perform; in that instance, the ALJ was required to identify and resolve any apparent conflicts between the DOT and the VE's testimony. *See Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309 (11th Cir. 2021); *Washington*, 906 F.3d 1353); *Albra v. Acting Comm'r of Soc. Sec.*, 825 F. App'x 704 (11th Cir. 2020); *Bradley v. O'Malley*, No. 1:22-CV-01312, 2024 WL 665781 at *2 (N.D. Ala. Feb. 16, 2024); *Stella H. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-00145, 2022 WL 16706714 at *2 (N.D. Ga. Jan. 28, 2022); *Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019), *as amended* (Feb. 22, 2019); *Favata v. Kijakazi*, No. 1:22-CV-00552, 2023 WL 8434457 at *2 (D.N.H. Dec. 5, 2023); *Linwood C. v. Kijakazi*, No. 1:22-CV-00013, 2022 WL 10337867 at *3 (D. Me. Oct. 18, 2022), *report and recommendation adopted sub nom. Linwood C. v. Soc. Sec. Admin. Comm'r*, No. 1:22-CV-00013, 2022 WL 17454017 (D. Me. Dec. 6, 2022); *Buckwalter*, 5 F.4th at 1321; *Ledford v. Comm'r of Soc. Sec.*, No. 8:20-CV-2516, 2022 WL 2195001 at *2 (M.D. Fla. June 1, 2022), *report and recommendation adopted*, No. 8:20-CV-2516, 2022 WL 2193158 (M.D. Fla. June 17, 2022).

- that Plaintiff's construed motion for summary judgment (Doc. 12) is due to be **DENIED**;

- that the Commissioner's construed motion for summary judgment (Doc. 16) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

      **DONE** this the 25th day of April 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**